## Case No. 1,690.

### BOTTS et al. v. CRENSHAW.

[Chase, 224.] [1]

Circuit Court, D. Virginia. May Term, 1868

PRINCIPAL AND AGENT — REVOCATION OF AGENCY BY CIVIL WAR — INVESTMENT IN CONFEDERATE BONDS—LIABILITY OF AGENT FOR.

1. The late civil war did not revoke an agency established in one of the southern states before the war, by a citizen of one of the northern states.

[See note at end of case.]

2. An attorney in Virginia collected a claim entrusted to him before the war by a citizen of

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

Kentucky, in Confederate money, during the war, and invested the same in Confederate bonds by order of a Virginia state court. He is liable after the war for the value of the Confederate money, as of the date when he received it.

[Followed in Head v. Starke, Case No. 6,293.]

[See note at end of case.]

3. An order of the hustings court of the city of Richmond, authorizing the attorney to invest funds collected by him for citizens of Kentucky in Confederate bonds, which perished by the result of the war, will not be recognized in this court.

[See note at end of case.]

At law. This was an action brought by plaintiffs [Botts and Darnall], citizens of Kentucky, against the defendant, a citizen of Virginia, to recover the amount of certain claims entrusted to him before the war, as attorney-at-law, for collection. It appeared that one Green owed the plaintiffs money, for which he gave them his negotiable notes, which fell due before the war, and were not paid by Green. The plaintiffs then sent the notes to Crenshaw, a practicing attorney of the courts of Richmond, Virginia, for collection. Green got into pecuniary difficulties after the war commenced, and when it was impossible for Crenshaw to communicate with his clients. Under these circumstances, he compromised the notes at eighty cents on the dollar, and received that sum in Confederate money, and subsequently finding it depreciating on his hands, applied by petition to the hustings court of the city of Richmond, a court of general equity jurisdiction, and which, with other courts of Virginia by an act passed in 1863, had special authority to order fiduciaries on their petition to invest trust funds in bonds of the state, or of the Confederate States, for authority to invest this money thus collected in Confederate bonds—which authority was given, the investment made, and the bonds perished with the power which created them.

CHASE, Circuit Justice. The agency created by the plaintiff in the defendant was not terminated by the status of war. It continued with all its rights, duties, and obligations. It is for the jury to say whether this agency authorized the defendant to compromise this debt under the circumstances, and to recover payment of it in Confederate currency. If they find that defendant had such authority, then they must find the value of such currency, when defendant received it in gold, and render their verdict for the plaintiff for such amount. The order of the hustings court of Richmond, ordering and authorizing defendant to invest the funds of the plaintiffs in his hands, they being citizens of a state adhering to the United States residing there, can not be recognized by this court, because it is an act in derogation of the rights of persons beyond the jurisdiction of the de facto government of Virginia, of

which that court was a constituent part, and because it is an act, the tendency and effect of which is to sustain the course of the Confederate government and aid it in its struggle against the United States. Ordinary acts of government relating to marriage contracts, conveyances, wills, &c., done by the de facto government, will be sustained and enforced by the federal courts; but such acts as the one in question can not be.

The jury found for the plaintiff the value of the Confederate currency in gold at the time of its receipt, and the court ordered the judgment to be entered generally for the amount so found.

[NOTE. In time of war, contracts directly or indirectly made with persons within the enemy's territory are void. U. S. v. Lapene, 17 Wall. (84 U. S.) 601; Filor v. U. S., 3 Ct. Cl. 25; Scholefield v. Eichelberger, 7 Pet. (32 U. S.) 586. But a contract made when both parties are within the hostile lines is lawful. Cramer v. U. S., 6 Ct. Cl. 381; Montgomery v. U. S., 15 Wall. (82 U. S.) 395, affirming 5 Ct. Cl. 648; U. S. v. Grossmayer, 9 Wall. (76 U. S.) 72, reversing 4 Ct. Cl. 1. Civil war does not terminate an agency established prior thereto by residents respectively of the hostile sections (Anderson v. Bank, Case No. 354; Douglas v. U. S., 14 Ct. Cl. 1); and the principal may accept the beneficial acts of the agent (Mayer v. U. S., 3 Ct. Cl. 249). See Quigley v. U. S., 13 Ct. Cl. 367. See, also, Stoddart v. U. S., 4 Ct. Cl. 511, to the effect that war suspends the relation.

[An investment of trust funds in Confederate securities, although by order of a court, is illegal, and does not relieve the depositor from liability. Horn v. Lockhart, 17 Wall. (84 U. S.) 570; Head v. Starke, Case No. 6,293; Micon v. Lamar, 1 Fed. 14; Van Epps v. Walsh, Case No. 16,850. The courts of the Confederate States had no jurisdiction to affect the rights of citizens residing in loyal states. Livingston v. Jordan, Id. 8,415; Cuyler v. Ferrill, Id. 3,523; Hickman v. Jones, 9 Wall. (76 U. S.) 197. And see French v. Tumlin, Case No. 5,-104; Ketchum v. Buckley, 99 U. S. 188.]